UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
PETWORTH HOLDINGS, LLC, *et al.*,

    Plaintiffs,

    v.                                        Civil Action No. 18-3 (JEB)

MURIEL BOWSER, *et al.*,

    Defendants.
_____

## MEMORANDUM OPINION

Early last year, Plaintiffs Petworth Holdings, LLC and John Formant filed suit in this Court asserting that a local statute regulating certain gas stations in the District of Columbia violates the Fifth Amendment to the United States Constitution. Citing an intervening change in the law governing Fifth Amendment challenges, Plaintiffs now move to amend their Complaint to add a new claim under 42 U.S.C. § 1983 and a new defendant, the District of Columbia. This change would allow them to pursue monetary damages, as opposed to merely injunctive and declaratory relief. Because Plaintiffs have offered a plausible rationale for their delay, no prejudice would accrue from such an amendment, and Defendants have failed to establish futility, the Court will grant the Motion.

**I.    Background**

Plaintiffs are the owners of a property on which currently sits a full-service Shell gas station. See Compl., ¶¶ 3–6. As the Court described in its prior Opinion, they allege that certain recent amendments to a longstanding D.C. statute that regulates the alteration and conversion of such gas stations in the District have unconstitutionally impeded their ability to sell this property.

1

See Petworth Holdings, LLC v. Bowser, 308 F. Supp. 3d 347, 350–51 (D.D.C. 2018). The Act as amended provides: "No retail service station which is operated as a full service retail service station on or after April 19, 1977, may be discontinued, nor may be structurally altered, modified or otherwise converted . . . into a non full service facility or into any other use." D.C. Code § 36-304.01(b). Plaintiffs allege that the Act now prevents property owners such as themselves from selling their land because potential purchasers do not want to operate a full-service gas station "in perpetuity." Compl., ¶ 36.

Plaintiffs originally filed their Complaint in January 2018, seeking a declaration that the Act violates the Fifth and Thirteenth Amendments to the United States Constitution and an injunction barring the City from enforcing it. Defendants moved to dismiss. In April 2018, the Court granted Defendants' Motion as to Plaintiffs' Thirteenth Amendment claim only. In doing so, the Court held that Plaintiffs had sufficiently pled that the Act "frustrated their reasonable investment expectations" for their property and had thereby stated a plausible Fifth Amendment claim. See Petworth, 308 F. Supp. 3d at 357. The parties proceeded to discovery, which is not yet complete.

As noted above, Plaintiffs have recently moved to amend their Complaint, seeking to add the District of Columbia as a defendant and a new claim under 42 U.S.C. § 1983. Defendants consent to the former proposed addition but oppose the latter, which the Court now resolves. See ECF No. 36 (Opp.) at 3 n.4.

## II. Legal Standard

A plaintiff may amend her complaint once as a matter of right within 21 days of serving it or within 21 days of being served a responsive pleading. See Fed. R. Civ. P. 15(a)(1). Otherwise, a plaintiff must seek consent from the defendant or leave from the court. See Fed. R.

Civ. P. 15(a)(2). In such circumstances, however, the Court ought to "freely give leave [to amend a pleading] when justice so requires." Id. The Supreme Court has instructed that leave to amend should accordingly be granted "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In this Circuit, "[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing Foman, 371 U.S. at 182). Under Rule 15(a), "the non-movant generally carries the burden in persuading the court to deny leave to amend." Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

### III. Analysis

Defendants argue that Plaintiffs' proposed amended Complaint is unduly delayed, unfairly prejudicial, and futile. The Court considers each of these arguments in turn.

#### A. Undue Delay

Defendants first assert that Plaintiffs' Motion to Amend — filed about twenty months after their Complaint — should be rejected because they exhibited undue delay in filing it. Delay, indeed, "is a valid reason to reject a party's attempt to add a new theory of liability to a complaint." Elkins v. District of Columbia, 690 F.3d 554, 565 (D.C. Cir. 2012). But the delay must be "undue" — that is, the reason for the delay is pertinent to the determination of whether leave to amend should be granted. See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 247–48 (D.C. Cir. 1987) (affirming denial of leave to amend when plaintiff "offered no explanation for its tardiness"). To justify their delay here, Plaintiffs point to a

3

Supreme Court decision issued just a few months ago, which they argue cleared the way for their proposed amendment.  See ECF No. 35 (Pl. Motion to Amend) at 1 (citing Knick v. Township of Scott, 139 S. Ct. 2162 (2019)).

By way of background, in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court reversed the granting of a jury award of $350,000 to a plaintiff who had brought a takings claim against a regional planning commission under § 1983.  In doing so, the Court held that plaintiffs could not bring certain takings claims in federal court against state or local governments before seeking "compensation [for that taking of property] through the procedures the State has provided for doing so."  Id. at 194–96.  Knick, however, overturned Williamson County and explicitly eliminated any "exhaustion requirement for § 1983 takings claims." 139 S. Ct. at 2172.  The Court instead held that "a property owner may bring a Fifth Amendment claim under § 1983 upon the taking of his property without just compensation by a local government" and need not first seek compensation through state-provided procedures.  Id. at 2179.  Plaintiffs therefore argue that Knick "represents a change in the law" that justifies their addition of a § 1983 claim to their Complaint.  See Pl. Motion to Amend at 1–2.

The Court concurs with Plaintiffs that the Knick decision, at a minimum, clarified their litigation options respecting their takings challenge, plausibly excusing their not including such a claim in their original Complaint.  It is true that prior to Knick, courts had sometimes waived Williamson County's exhaustion requirement (and perhaps this Court would have done the same had Plaintiffs originally brought a § 1983 claim), but even then, confusion reigned among the lower courts as to when, if at all, such waiver could occur.  For example, courts were split as to whether facial — as distinct from as-applied — takings claims were exempt from Williamson

4

County's state-litigation requirements. Compare Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Glarza, 484 F.3d 1, 14 (1st Cir. 2007) (holding that "facial statutory challenges" are not blocked by Williamson County's state-litigation requirement), with Alto Eldorado Partnership v. County of Santa Fe, 634 F.3d 1170, 1175–77 (10th Cir. 2011) (reaching the opposite conclusion). Courts were also split as to whether Williamson County was a "prudential" doctrine (and thereby discretionary) or "jurisdictional" (and thereby mandatory). Compare Peters v. Village of Clifton, 498 F.3d 727, 734 (7th Cir. 2007) ("Williamson County's ripeness requirements are prudential in nature."), with Snaza v. City of St. Paul, 548 F.3d 1178, 1182 (8th Cir. 2008) ("We have held that Williamson County is jurisdictional."). Surveying this jumbled landscape, Plaintiffs could have reasonably concluded that this Court would not have permitted them to pursue a takings challenge seeking monetary damages under § 1983 (the precise claim that the Williamson County Court had rejected) without their first exhausting available state procedures for seeking such compensation.

Defendants' contrary arguments offer little. They first contend that Plaintiffs might have been able to assert a § 1983 claim in their original Complaint, but do not give a specific reason as to why this would have been the case. Indeed, Defendants themselves concede that — at the very least — "it is not clear" that Plaintiffs could have previously brought a § 1983 claim seeking monetary damages. See Opp. at 4. Defendants also argue that Knick is inapposite because Plaintiffs originally sought declaratory and injunctive relief, and Knick — in their reading — only affected claims for monetary damages. This argument simply misses the point, as the purpose of Plaintiffs' proposed amendment is precisely to add a cause of action that could result in the imposition of monetary damages. See Armstrong v. Exceptional Child Care Center Inc., 135 S. Ct. 1378, 1392 (2015) (Sotomayor, J., dissenting) (noting that unlike plaintiffs

5

seeking equitable redress to "halt or prevent [a] constitutional violation," plaintiffs bringing suit under § 1983 may seek a "variety of remedies — including damages") (citing United States v. Stanley, 483 U.S. 669, 683 (1987)).

B. Prejudice

Even if Plaintiffs could have brought a takings claim seeking monetary damages under § 1983 prior to Knick, an examination of any potential prejudice to Defendants also favors granting their Motion to Amend. "Consideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice." Atchinson v. District of Columbia, 73 F.3d 418, 426 (D.C. Cir. 1996). Put differently, "the significance of a delay depends on the prejudice it causes." Washington Metro Area Transit Auth. v. Aon Risk Servs., Inc., 2013 WL 12341689, at *2 (D.D.C. May 17, 2013). Thus, "[t]he most important factor the Court must consider when determining whether to grant leave to amend is the possibility of prejudice to the opposing party." Djourabchi v. Self, 240 F.R.D. 5, 13 (D.D.C. 2006) (internal quotation marks omitted).

To establish prejudice from a proposed amended pleading, an "opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *In re* Vitamins Antitrust Litig., 217 F.R.D. 30, 32 (D.D.C. 2003). Defendants contend that they will be prejudiced by the proposed amendments to the Complaint because they have conducted discovery "based on the need to respond to plaintiffs' Fifth Amendment claim" and have "sought no information regarding the elements of a claim under Section 1983." Opp. at 7.

The Court is unconvinced. First, Defendants will have ample opportunity to tweak their discovery strategy because, as they concede, discovery has yet to close and both Plaintiffs are yet

6

to be deposed. Id. at 6. Plaintiffs, in fact, have expressed a willingness to extend fact discovery for as long as Defendants so desire, see ECF No. 37 (Pl. Reply) at 5, and the Court can certainly accommodate their concerns. Second, and equally significant, Plaintiffs' addition of a Fifth Amendment challenge brought under § 1983 (rather than under the Constitution alone) merely provides a means by which they can seek monetary damages should they prevail. Put differently, Plaintiffs seek a new remedy but are not pursuing a new theory of the case. They are "not adding any new factual allegations," and the § 1983 claim is "closely related to (perhaps even duplicative of) existing claims." Washington Metro Area Transit Auth., 2013 WL 12341689, at *2 (granting motion to amend given lack of prejudice to nonmoving party); see also State Teachers Retirement Bd. v. Flour Corp., 654 F.2d 843, 856 (2d Cir. 1981) (reversing district court's denial of leave to amend where new claim was closely related and there would be no need for "a great deal of additional discovery"). The Court, accordingly, sees little prejudice from amendment here.

    C. Futility

Finally, Defendants argue that Plaintiffs' proposed § 1983 claim should be rejected as futile. "[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010). Defendants correctly note that Knick did not overturn Williamson County's so-called "finality" requirement, which dictates that before a regulatory-taking claim be brought, "the responsible state agency [must have] made a final decision as to the 'application of the challenged regulation to the property at issue.'" Dist. Intown Properties Ltd. Partnership v. Dist. of Columbia, 23 F. Supp. 2d 30, 33 (D.D.C. 1998) (quoting Williamson County, 473 U.S. at 194). Defendants therefore argue that Plaintiffs' compensatory-damages claim is futile because

they have not received a "final" decision from a state administrative body as to whether they are subject to the regulation at issue. Defendants also point out that Plaintiffs' claim for punitive damages cannot stand because "absent extraordinary circumstances, punitive damages are unavailable against the District of Columbia under District of Columbia law." Opp. at 9 (quoting Mpoy v. Fenty, 870 F. Supp. 2d 173, 181–82 (D.D.C. 2012)).

Taking Defendants' arguments in reverse order, it will certainly be challenging for Plaintiffs to demonstrate the "extraordinary circumstances," necessary for maintaining a § 1983 claim for punitive damages. See Lucero-Nelson v. Washington Metro. Area Transit Auth., 1 F. Supp. 2d 1,11 (D.D.C. 1998) (noting that "extraordinary circumstances" exception is "narrowly construed"). Plaintiffs do not offer much in the way of a defense of their claim for punitive damages, but Defendants' mere citation to the legal standard here — without more — cannot sustain an argument to the contrary. If Defendants would like to fully brief this issue and file a motion to strike punitive damages, they are, of course, free to do so at any time.

Finally, under the motion-to-dismiss standard, Plaintiffs have sufficiently established that their claim for compensatory damages does not run afoul of Williamson County's finality requirement. Defendants contend that Plaintiffs have not pursued to conclusion all available avenues of administrative review because they can seek an exemption from the challenged statute from the Department of Energy and Environment. Plaintiffs counter with their own futility-based argument, claiming that the exemption by its terms cannot apply to property owners such as themselves, who are not also "distributor[s]" or "retail dealer[s]." See D.C. Code § 36-304.01(d)(1). According to Plaintiffs, it would be fruitless for them to apply for an exemption.

Given these competing arguments, Defendants have simply failed to carry their burden of establishing the futility of Plaintiffs' proposed additional claim.  As the Supreme Court has held, "[O]nce it becomes clear that the agency lacks discretion to permit [the proposed land use], or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened."  Palazzolo v. Rhode Island, 533 U.S. 606, 620 (2001).  In other words, "ripeness doctrine does not require a landowner to submit applications for their own sake."  Id. at 622.  Defendants have not offered any arguments as to why, notwithstanding the seemingly clear statutory language at issue, Plaintiffs (who are not "distributors" or "retail dealers" as defined by the statute, see D.C. Code § 36-301.01) could be granted an exemption.  They never explain, moreover, why Plaintiffs should have pursued an administrative process that came into existence 15 months after the filing of their Complaint.  The Court is thus unconvinced at this time that the proposed claim for compensatory damages is futile.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Plaintiffs' Motion to Amend their Complaint.  A separate Order consistent with this Opinion shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 3, 2019